IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 18-cv-03198-CMA-SKC

OTTER PRODUCTS, LLC, and
TREEFROG DEVELOPMENTS, INC.,

     Plaintiffs,

v.

EDDY WANG, and
JOHN DOES 1-10,

     Defendants.

---

**ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION**

---

This matter is before the Court on Plaintiffs Otter Products, LLC and TreeFrog Developments, Inc.'s Motion for Default Judgment and Permanent Injunction. (Doc. # 24.) Defendant Eddy Wang did not file a response to the Motion. For the following reasons, Plaintiffs' Motion is granted.

### I.    BACKGROUND

Plaintiffs develop, manufacture, market, and sell premium mobile device, smartphone, and tablet cases and accessories under the OTTERBOX® and LIFEPROOF® brands ("Otter Products"). Plaintiffs sell their products exclusively through their own website and their network of authorized distributors, retailers, and resellers ("Authorized Resellers").

Otter has registered several trademarks with the United States Patent and Trademark Office ("USPTO"), including, but not limited to: OTTERBOX® (U.S. Trademark Reg. Nos. 5,439,652; 5,498,180; 4,602,221; and 3,788,534); DEFENDER SERIES® (U.S. Trademark Reg. No. 4,616,874); STRADA SERIES® (U.S. Trademark Reg. No. 4,864,518); STATEMENT SERIES® (U.S. Trademark Reg. No. 4,952,893); SYMMETRY SERIES® (U.S. Trademark Reg. No. 4,709,178); PURSUIT SERIES® (U.S. Trademark Reg. No. 4,280,846); ALPHA GLASS® (U.S. Trademark Reg. No. 4,702,961); VENTURE® (U.S. Trademark Reg. No. 5,449,981); TROOPER® (U.S. Trademark Reg. No. 5,496,963); and ELEVATION® (U.S. Trademark Reg. No. 5,444,887) (the "OtterBox Trademarks").

TreeFrog has several trademarks with the USPTO, including, but not limited to: LIFEPROOF® (U.S. Registration Nos. 4,519,288; 4,520,890; 4,360,963; and 4,057,201); LIFEJACKET® (U.S. Registration No. 4,354,783); and LET'S GO!® (U.S. Registration No. 4,285,129) (the "LifeProof Trademarks"). The registrations for the OtterBox and LifeProof Trademarks (collectively, the "Otter Trademarks") are valid, subsisting, and in full force and effect.

In recent years, there has been an increase in the amount of retail sales completed through online marketplaces, such as www.amazon.com ("Amazon"). These online marketplaces allow third party sellers to sell a manufacturer's products anonymously. It has been well publicized that unauthorized third-party sellers sell diverted products through the online marketplaces, including damaged, defective, tampered-with, and/or fake products. Because these third-party sellers operate

anonymously, a manufacturer has no ability to exercise its quality controls over the products or to ensure the products are safe, which presents serious risks to consumers.

Anonymous sales by unauthorized sellers through the online marketplaces also threaten a manufacturer's ability to maintain its goodwill, reputation, and brand integrity. A consumer who receives a defective or poor-quality product from an unauthorized seller through an online marketplace is likely to become frustrated with the brand. The consumer can leave a negative review about the brand on the marketplace site, thereby impacting the purchasing decisions of other consumers. Plaintiffs have recieved multiple negative online marketplace reviews, including on Amazon, from consumers who purchased products bearing the Otter Trademarks from unauthorized sellers. The negative reviews include receiving damaged, defective, and poor-quality products.

To protect consumers and the value and goodwill associated with OtterBox and LifeProof brands, Plaintiffs have implemented substantial quality controls that are designed to minimize the likelihood that poor quality products reach consumers. These quality controls include certain inspection, storage, handling, and other requirements, assisting with any recalls or other consumer safety information efforts, and customer service requirements. Additionally, to further combat the unauthorized sale of poor-quality products on the online marketplaces, Plaintiffs have imposed additional requirements on their Authorized Resellers that are approved to sell online and on the online marketplaces. Moreover, to allow Plaintiffs to know where their products are being sold so that they can exercise control over their products and address any quality

3

issues that may arise, Authorized Resellers are prohibited from selling on unauthorized websites and online marketplaces and from selling to other resellers. Authorized Resellers that are approved to sell on online marketplaces may sell only under storefront names that have been specifically approved by Plaintiffs and are prohibited from selling products anonymously

Plaintiffs vet their Authorized Resellers before approving them to sell online and on online marketplaces to make sure that the Authorized Reseller operates an appropriate and acceptable business that Plaintiffs wish to have representing their brands. Authorized Resellers selling online and on the online marketplaces must comply with several additional quality control requirements, including opting out of certain repackaging and commingling programs that may result in consumers receiving used, damaged, or counterfeit products; having tools in place to solicit customer feedback and respond to any negative reviews and working with Plaintiffs to address any such reviews; and maintaining an acceptable online presence and seller rating. Further, Plaintiffs monitor their Authorized Resellers to ensure their compliance with Plaintiffs' quality controls, including conducting reviews of the Authorized Resellers' websites, storefronts, and reviews and conducting test purchases and inspections.

The quality controls Plaintiffs have imposed are legitimate and substantial and allow Plaintiffs to control the quality of products sold under their trademarks. A seller's compliance with these quality controls would be material and relevant to a consumer's purchasing decision

Plaintiffs also provide a Limited Warranty ("Warranty") for products purchased from Plaintiffs or their Authorized Resellers, covering the repair or replacement of products for defects for a period of time. The Warranty provides that a customer can receive a repair or replacement product if a product has a defect in manufacturing, materials, or workmanship during the warranty period applicable to the product. The Warranty is a material component of Otter Products. Because Plaintiffs cannot exercise their quality controls over products sold by unauthorized sellers, the Warranty is not available for products sold by unauthorized sellers who are not subject to Plaintiffs' quality controls.

Defendant Eddy Wang ("Wang") operates storefronts on Amazon under the names "1to3shop-store" and "E&E Global" (the "Storefronts"). Through the Storefronts, Wang has, and continues to, advertise and sell products bearing the Otter Trademarks. Wang is not an Authorized Reseller of Otter Products. The products Wang sells bearing the Otter Trademarks are: not genuine Otter Products; are materially different from genuine Otter Products because they do not come with the Warranty; and are also not genuine Otter Products because they do not abide by and interfere with Plaintiffs' quality controls.

By selling materially different, non-genuine products bearing the Otter Trademarks, Wang is creating consumer confusion because consumers who purchase products from Wang think they are getting genuine Otter Products that come with the Warranty and abide by Plaintiffs' quality controls when, in fact, they are not.

Wang advertises products bearing the Otter Trademarks on the Storefronts as being "New" products that come with the Warranty. His product listings also specifically state that they come with the Warranty. These representations are false because the products Wang sells do not come with the Warranty.

Plaintiffs' agreements with their Authorized Resellers prohibit Authorized Resellers from selling products to third parties for purposes of resale. Wang knows of this prohibition, but has continued to acquire products from Plaintiffs' Authorized Resellers for the purpose of reselling them and infringing on the Otter Trademarks. Thus, Wang has acted with an improper purpose because he intended to induce Plaintiffs' Authorized Resellers to breach their agreements.

Wang's unlawful actions have caused, and continue to cause, Plaintiffs significant harm. Wang has misled, and continues to mislead, consumers into believing they are purchasing genuine Otter Products that come with the Warranty and comply with Plaintiffs' quality controls when, in fact, they are not. As a proximate result of Wang's actions, Plaintiffs have suffered, and will continue to suffer, irreparable harm to their reputation, goodwill, and intellectual property rights. Plaintiffs have also suffered monetary harm as a result of Wang's actions, including loss of sales and damage to their existing and potential business relations.

Wang's unlawful actions have been willful and malicious. Plaintiffs spent significant time and money trying to stop Wang's illegal sale of its products through the Storefronts. Plaintiffs sent Wang several cease and desist letters, but Wang refused to comply and continued to sell products bearing the Otter Trademarks. Further, despite

being served with the Summons and Complaint in this action, Wang has chosen not to appear and continues to engage in its unlawful conduct.

## II.     STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, the court shall enter a default judgment against a party that has failed to plead or otherwise defend an action brought against it. Fed. R. Civ. P. 55(b)(2). Default judgment may be entered by the clerk of court if the claim is for "a sum certain," Fed. R. Civ. P. 55(b)(1), in all other cases, as here, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). "[D]efault judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection." *In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991) (internal quotation marks and citation omitted).

A default amounts to an admission of liability, and all well-pleaded allegations in the complaint pertaining to liability are deemed true. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (internal citation omitted); *Lyons P'ship, L.P. v. D&L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 109 (E.D.N.Y. 2010). It "remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Leider v. Ralfe*, No. 01 Civ. 3137 (HB) (FM), 2004 WL 1773330, at

*7 (S.D.N.Y. July 30, 2004) (quoting *In re Indus. Diamonds Antitrust Litig.*, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000)).

### III. ANALYSIS

#### A. THIS COURT HAS JURISDICTION

This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

This Court has personal jurisdiction over Wang because Wang has expressly aimed his tortious activities toward Colorado and purposefully availed himself of the privilege of doing business in Colorado through significant and regular sales of infringing products bearing the Otter Trademarks to Colorado with the knowledge that Plaintiffs are located in Colorado and will be harmed in Colorado. *Cornice Techs., Inc. v. Affinity Dental Prods.*, 2005 U.S. Dist. LEXIS 45546, at *15 (D. Colo. July 21, 2005); *Leach v. Pharmedoc Inc.*, 2017 U.S. Dist. LEXIS 33565, at *5-6 (W.D. Okla. Mar. 9, 2017); *Exact Mktg. v. Unique Sports Prods.*, 2018 U.S. Dist. LEXIS 123316, at *5-6 (D. Utah July 20, 2018); *Orbit Irrigation Prods. v. Melnor, Inc.*, 2017 U.S. Dist. LEXIS 51561, at *11-12 (D. Utah Apr. 3, 2017); *A.L. Enters. v. Sebron*, 2008 U.S. Dist. LEXIS 70177, at *5-6 (D. Utah Sep. 17, 2008)*; Rainy Day Books, Inc. v. Rainy Day Books & Cafe, L.L.C.*, 186 F.Supp.2d 1158, 1164–65 (D. Kan. 2002); *Allstar Mktg Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1121-23 (C.D. Cal. 2009).

**B.    DEFENDANT HAS DEFAULTED**

It is manifest from the record that Defendant has defaulted. Wang was properly served with a copy of the Complaint and Summons on December 26, 2018, and the Clerk entered the Entry of Default on February 1, 2019.

Default judgment is appropriate if there is a sufficient basis in the pleadings for the judgment and the unchallenged facts constitute a legitimate cause of action. *Grady v. Nelson*, 2014 U.S. Dist. LEXIS 172759, at *12 (D. Colo. Dec. 15, 2014). The well-pled facts of the complaint and undisputed facts set forth by the moving party in affidavits and exhibits are accepted as true. *Id.*; *United States v. Craighead*, 176 F. App'x 922, 924 (10th Cir. 2006).

1.    <u>Trademark Infringement</u>

Plaintiffs have stated a claim for trademark infringement under 15 U.S.C. §§ 1114, 1125(a)(1)(a), unfair competition under 15 U.S.C. § 1125(a)(1)(A), and common law trademark infringement.

Plaintiffs must establish: (1) they have a protectable interest in the trademark; (2) Defendant used an identical or similar mark in commerce; and (3) Defendant has likely confused customers by using the mark. *See Derma Pen, LLC v. 4EverYoung Ltd.*, 773 F.3d 1117, 1120 (10th Cir. 2014); *Cleary Bldg. Corp. v. David A. Dame, Inc.*, 674 F. Supp. 2d 1257, 1270 (D. Colo. 2009).

Plaintiffs have a protectable interest, as the Otter Trademarks are registered, valid, subsisting, and in full force and effect, and Plaintiffs use those marks to advertise and sell Otter Products. Wang has used the Otter Trademarks in commerce by

advertising, selling, and distributing products bearing the mark. Additionally, Wang has caused consumer confusion because he is selling materially different, non-genuine products bearing the Otter Trademarks that do not come with the Warranty and do not comply with Plaintiffs' quality controls without disclosing these differences to consumers.

Plaintiffs have implemented legitimate and substantial quality controls that its Authorized Resellers must follow. Wang does not comply with these quality controls and his sales of products bearing the Otter Trademarks outside of Plaintiff's quality control program interfere with Plaintiffs' quality controls and their ability to exercise control over products bearing their trademarks. The products Wang sells are not genuine Otter Products and his sales diminish the value of the Otter Trademarks. *Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 6 (2d Cir. 1996); *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009); *Societe Des Produits Nestle, S.A. v. Case Helvetica, Inc.*, 982 F.2d 633, 642 (1st Cir. 1992); *Shell Oil Co. v. Comm. Petro. Inc.*, 928 F.2d 104 (4th Cir. 1991); *El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 393, 395 (2d Cir. 1986); *Bel Canto Design, Ltd. v. MSS HiFi, Inc.*, 837 F. Supp. 2d 208, 229–30 (S.D.N.Y. 2011).

Wang is also selling products that are materially different from genuine Otter Products because they do not come with the Warranty. *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1071-73 (10th Cir. 2009); *Bel Canto*, 837 F. Supp. 2d at 229-30; *TracFone Wireless, Inc. v. Pak China Group Co.*, 843 F. Supp. 2d 1284, 1297 (S.D. Fla. 2012); *HM Elecs., Inc. v. RF Techs., Inc.*, 2013 U.S. Dist. LEXIS

201896, at *6 (S.D. Cal. Oct. 3, 2013); *RFA Brands, LLC v. Beauvais*, 2014 U.S. Dist. LEXIS 181781 (E.D. Mich. Dec. 23, 2014).

Wang's actions cause consumer confusion because consumers who purchase products from Wang think they are getting genuine Otter Products that come with the Warranty and comply with Plaintiffs' quality controls when they are not. *See Beltronics*, 562 F.3d at 1071-73 (10th Cir. 2009) (trademark infringement where defendant sold products without plaintiff's warranty); *Adolph Coors Co. v. A. Genderson & Sons, Inc.*, 486 F. Supp. 131, 136 (D. Colo. 1980) (trademark infringement where defendant sold products outside Coors' quality controls).

2. False Advertising

Plaintiffs have stated a claim for false advertising under 15 U.S.C. § 1125(a)(1)(B).

Plaintiffs must show: (1) Defendant made a materially false or misleading representation of fact; (2) in connection with commercial advertising or promotion; (3) in commerce; (4) such representation misrepresents the nature of Plaintiffs' services or commercial activities; and (5) Plaintiffs have been or are likely to be injured as a result. 15 U.S.C. § 1125(a); *Wilson v. AdvisorLaw LLC*, 2018 U.S. Dist. LEXIS 174779, at *7-8 (D. Colo. Oct. 10, 2018).

Here, Wang has made material false representations by stating his products come with the Warranty when they do not. Those representations were made in commerce in connection with Wang's advertisements because they were made on Wang's product listings. Wang's representations misrepresent Plaintiffs' services

11

because he is representing Plaintiffs offer a warranty for the products he sells when they do not. Last, Wang's false advertisements have harmed Plaintiffs. Thus, Plaintiffs have stated a claim for false advertising.

    3.    <u>Trademark Dilution</u>

Plaintiffs have stated a claim for trademark dilution under 15 U.S.C. § 1125(c).

To prevail on a claim for dilution, a plaintiff must show: (1) it owns a "famous" mark; (2) the mark was famous before the defendant began its use; and (3) the defendant's use has or will cause "dilution." *King of the Mt. Sports, Inc. v. Chrysler Corp.*, 968 F. Supp. 568, 577 (D. Colo. 1997), *aff'd*, 185 F.3d 1084 (10th Cir. 1999). Dilution means that defendant's use of the trademark will likely "blur" or "tarnish" the plaintiff's mark or harm its reputation. *Am. Acad. of Husband-Coached Childbirth v. Thomas*, 2010 U.S. Dist. LEXIS 136763, at *8-9 (D. Colo. Dec. 15, 2010).

Here, Plaintiffs have established that the OTTERBOX® trademark is famous – the mark was registered in May 2010, and Otter has actively, continuously, and exclusively used it to market and advertise its products; the mark is distinctive, well-recognized by consumers, and the means by which they distinguish OtterBox products from others in the marketplace; and consumers trust the mark and recognize it as standing for quality, durability, and dependability. *General Motors Co. v. Urban Gorilla, LLC*, 2010 U.S. Dist. LEXIS 136711, *15-16 (D. Utah Dec. 27, 2010) (HUMMER mark is famous); *Harris Research, Inc. v. Lydon*, 505 F. Supp. 2d 1161, 1166 (D. Utah 2007) (CHEM-DRY mark is famous). Wang began using the OTTERBOX® mark after it became famous. Wang's use of the OTTERBOX® mark has diluted and tarnished the

mark due because consumers who received damaged, defective, and poor-quality products from Wang associate that negative experience with Otter, causes them to lose faith in the OtterBox brand, and post negative reviews about OtterBox products. *Lydon*, 505 F. Supp. 2d at 1166 (dilution of CHEM-DRY mark); *VIP Prods., LLC v. Jack Daniel's Props.*, 291 F. Supp. 3d 891, 904–05 (D. Ariz. 2018) (dilution of JACK DANIEL'S mark).

  4. <u>Unfair and Deceptive Trade Practices</u>

Plaintiffs have stated a claim for unfair and deceptive trade practices under Colo. Rev. Stat. § 6-1-105.

To state an unfair and deceptive trade practice claim, a plaintiff must show: (1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of the defendant's business; (3) the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the challenged practice caused plaintiff's injury. *Cleary Bldg. Corp.*, 674 F. Supp. 2d at 1270.

Here, Wang has engaged in unfair and deceptive trade practices because he has falsely represented that his products come with the Warranty when they do not. Wang's actions occurred in the course of his business, as they are part of the product listings he advertises to consumers. Wang's deceptive trade practices impacts consumers and creates consumer confusion because consumers are likely to rely on his false representations in the product listings and believe that they are purchasing genuine

13

Otter Products that come with the Otter Warranty and comply with Plaintiffs' quality controls when they are not. Plaintiffs have also been harmed as a result of Wang's deceptive trade practices.

     5.     <u>Tortious Interference with Contract</u>

Plaintiffs have state a claim for tortious interference with contract.

To state a claim of tortious interference, a plaintiff has to show: (1) the existence of a valid contract; (2) the defendant knew of the contract; (3) the defendant intended to induce a breach; (4) the defendant engaged in conduct that produced a breach; (5) the interference with the contract was improper; and (6) the plaintiff suffered damages as a result. *Zimmer Spine, Inc. v. EBI, LLC*, 2011 U.S. Dist. LEXIS 103629, at *6-7 (D. Colo. Sept. 14, 2011). A plaintiff can prove the defendant intended to induce a breach by showing that the defendant acted with a purpose to induce the breach or knew that his actions were likely to induce the breach. *Mueller v. Swift*, 2017 U.S. Dist. LEXIS 83378, at *19 (D. Colo. May 31, 2017).

Here, Plaintiffs have specific agreements with their Authorized Resellers that prohibit them from selling Otter Products to third parties who intend to resell the products. Wang knew of this prohibition. Wang intended to induce a breach of these agreements because he knew that his purchase of Otter Products from Authorized Resellers for the purpose of resale would result in a breach. Wang's purchase and resale of Otter Products from Authorized Resellers did, in fact, produce a breach. Wang's interference with the agreements was improper because he acted with the intent to directly induce the breach of the agreements, with the motive to profit from

selling poor-quality Otter Products and misleading purchasers about the source of the products, and with no regard to the interests of Plaintiffs in protecting its brand and agreements with Authorized Resellers. *Mueller*, 2017 U.S. Dist. LEXIS 83378, at *26–28 (defendant acted improperly in interfering with employment contract by falsely accusing coworker of harassment and pressuring employer to fire him). Finally, as a result of Wang's actions, Plaintiffs have suffered damages. (Doc # 1 ¶¶ 182–85, 335); *Dawson*, 2013 U.S. Dist. LEXIS 49228, at *13, 20.

For the foregoing reasons, Default judgment is entered in this matter against Wang pursuant to Federal Rule of Civil Procedure 55(b)(2).

**C.** **INJUNCTIVE RELIEF**

The Lanham Act authorizes a district court to issue an injunction according to the principles of equity and upon such terms as the court may deem reasonable to prevent violations of trademark law. 15 U.S.C. § 1116(a). To determine whether injunctive relief is appropriate, courts weigh the following factors: (1) actual success on the merits; (2) a likelihood of irreparable injury if injunctive relief is not granted; (3) a balance of hardships favoring Plaintiff; and (4) whether an injunction will advance the public interest. A permanent injunction is warranted in this case. *Tony's Taps, LLC v. PS Enters.*, 2012 U.S. Dist. LEXIS 43293, *13–14 (D. Colo. Mar. 29, 2012).

Here, balancing of these factors weighs strongly in favor of granting Plaintiffs a permanent injunction. First, Plaintiffs will suffer irreparable injury if Wang continues to falsely advertise and sell products bearing the Otter Trademarks. *Id*. at *17 (irreparable harm if use of the mark will result in harm to reputation, trade, or goodwill). Second,

Plaintiffs lack an adequate remedy at law because Wang's continued infringement will cause damage to Plaintiffs' intellectual property, goodwill, and brand integrity. *Id*. at *25.

Third, the balance of hardships between the parties favors injunctive relief. Plaintiffs have expended substantial time and money developing and protecting the Otter Trademarks, and, without an injunction, they will be unable to protect their trademarks and stop Wang's infringing conduct. *Id*. Any harm to Wang in requiring him to comply with trademark law merits no equitable consideration. *Port-a-Pour, Inc. v. Peak Innovations*, 49 F. Supp. 3d 841, 873 (D. Colo. 2014). Last, the public interest lies in favor of upholding Plaintiffs' trademark rights and preventing customer confusion. *Tony's Taps, LLC*, 2012 U.S. Dist. LEXIS 43293, at *26.

Accordingly, the Court issues a permanent injunction enjoining Wang and any of his employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Wang and all of those in active concert and participation with Wang (the "Enjoined Parties") as follows. The Enjoined Parties are:

a. Prohibited from advertising or selling all Otter Products or products bearing the Otter Trademarks through any Amazon storefront, including, but not limited to, the Amazon storefronts currently named "1to3shop-store" and "E&E Global;"

b. Prohibited from advertising or selling, via the Internet or otherwise, all Otter products or products bearing the Otter Trademarks;

c. Prohibited from using any of the Otter Trademarks in any manner, including advertising on the Internet;

d. Prohibited from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all Otter Products as well as any products bearing any of the Otter Trademarks;

e. Prohibited from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Otter Trademarks including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Wang has sold bearing these trademarks;

f. Required to take all action to remove from the Enjoined Parties' websites or storefronts any reference to any of Otter Products, or any of the Otter Trademarks;

g. Required to take all action, including but not limited to, requesting Internet search engines (such as Google, Yahoo!, and Bing) to remove from the Internet any of the Otter Trademarks which associate Otter Products or the Otter Trademarks with the Enjoined Parties or the Enjoined Parties' websites or storefronts; and

h. Required to take all action to remove unauthorized Otter Trademarks from the Internet, including from Amazon.

Pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure, this Order is binding upon the following persons who receive actual notice of it: the parties, the parties' officers, agents, servants, employees, and attorneys, and other persons who

are in active concert or participation with the parties or the parties' officers, agents, servants, employees, and attorneys.

**D.     DAMAGES**

Under the Lanham Act, a trademark owner may recover A defendant's profits. 15 U.S.C. § 1117(a); *W. Diversified Servs. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1272 (10th Cir. 2005); *Bishop v. Equinox Int'l Corp.*, 154 F.3d 1220, 1223 (10th Cir. 1998). To establish a defendant's profits, a plaintiff is required to prove only the defendant's sales; it is then the defendant's burden to submit evidence of costs and deductions. *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1163 (10th Cir. 2013). If a defendant does not present any evidence of its costs and deductions, courts award the defendant's total sales to the plaintiff as disgorged profits. *Id*. A plaintiff is required to establish the defendant's sales only "with reasonable certainty." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993); *Klein-Becker*, 711 F.3d at 1163.

Plaintiffs have presented evidence that Wang's sales of infringing products from October 1, 2018 to February 12, 2019 totaled $61,399.48. Plaintiffs calculated the total from data collected through a monitoring tool called TriGuardian—which monitors listings and sales of products on Amazon and calculates the amount of sales that a particular storefront makes from certain products. Plaintiffs pulled data from TriGuardian regarding Wang's sales of Otter Products from October 1, 2018 through February 12, 2019—which shows over 1,200 sales in the amount of $61,399.48. As such, Plaintiffs have shown Wang's profits with reasonable certainty. *ADG Concerns, Inc. v. Tsalevich LLC*, 2018 U.S. Dist. LEXIS 155542, at *32–34 (N.D. Cal. Aug. 31, 2018).

Wang has not presented any evidence of costs or other deductions that reduce the amount of profits he made from his sale of infringing products. Accordingly, the Court finds that Plaintiffs are entitled to recover $61,399.48 from Wang.

This Court shall retain jurisdiction of this matter in law and in equity for the purpose of enforcing and/or adjudicating claims in violation of this Judgment and Permanent Injunction. Any such matters shall be raised by noticed motion.

## IV.     CONCLUSION

Based on the foregoing reasons, the Court ORDERS as follows:

1. Plaintiffs' Motion for Default Judgment (Doc. # 24) is GRANTED;
2. Pursuant to Federal Rule of Civil Procedure 55(b)(2), default judgment is entered against Defendant Wang;
3. A permanent injunction is entered against Defendant Wang in accordance with the terms stated herein;
4. The Court awards damages to Plaintiffs in the amount of $61,399.48.

DATED: March 28, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge