**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:18-cv-03198-CMA-SKC

OTTER PRODUCTS, LLC, et al.

      Plaintiffs,

v.

EDDY WANG, et al.,

      Defendants.

---

**PLAINTIFFS' RESPONSE TO DEFENDANT EDDY WANG'S FIRST CORRECTED
MOTION TO SET ASIDE DEFAULT JUDGMENT AND FOR EXTENSION OF TIME TO
RESPOND TO COMPLAINT**

---

I.    **INTRODUCTION**

      From October 2018 to December 2018, Defendant Eddy Wang received no fewer than three letters warning him that Plaintiffs Otter Products, LLC and Treefrog Developments, Inc. (collectively, "Otter") would file suit if he did not cease the unlawful sales of Otter products on the two storefronts he operated on www.amazon.com ("Amazon"). Wang never responded. Rather he continued to sell Otter products on his storefronts. When Otter followed through and sued Wang in December 2018, Wang was personally served with a copy of the summons and complaint. Wang never responded. Thereafter, counsel for Otter emailed Wang and advised him that Otter would move forward with obtaining a judgment against Wang if he did not respond within two days. Wang never responded. On February 1, 2019, Otter received an entry of default. Wang never responded. On March 14, 2019, Otter moved for default judgment. Wang never

responded.  On March 28, 2019, the Court granted Otter's motion for default judgment.

Nearly one month later, Wang finally responded—but he is too late.

Wang is entitled to set aside the default judgment under Fed. Civ. R. 60 <u>only</u> if he

can show "excusable neglect" and "the existence of a meritorious defense."  *Cessna Fin.*

*Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1445 (10th Cir.1983).

Wang can show neither.  Wang's failure to respond to Otter's complaint was the result of

a conscious decision to do nothing, not excusable neglect.  Moreover, Wang has offered

nothing but self-serving statements and allegations that a defense exists in response to

Otter's claims none of which are sufficient overcome this Court's entry of final judgment

in favor of Otter.  The Court should uphold its default judgment and deny Wang's motion.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

Otter filed suit against Eddy Wang, in his personal capacity, on December 13,

2018.  *See* Complaint [Doc. 01].  Wang was personally served on December 26, 2018.

*See* Proof of Service [Doc. 13].  Wang failed to answer or defend this action.  On January

21, 2019, counsel for Otter emailed Wang the complaint, summons and scheduling order.

*See* Declaration of Tyler Pensyl in Support of Response to Defendant Eddy Wang's First

Corrected Motion to Set Aside Default Judgment and for Extension of Time to Respond

to Complaint ("Pensyl Dec.") at ¶ 11.  In his email, counsel warned Wang, "I am writing

you to give you one last attempt to resolve this matter before we move forward with

obtaining a judgment against you.  If you do not respond to me by January 23, 2019, then

we will move forward with seeking a default judgment, including an injunction,

disgorgement of profits, attorneys' fees, and all other appropriate relief."  *Id.* at Ex. E.

Wang ignored this warning and continued to decline to answer or to defend this action. Accordingly, on February 1, 2019, the clerk entered an entry of default.  *See* Entry of Default [Doc. 17].  Even after entry of default, Wang still failed to answer or defend this action.  On March 14, 2019 Otter moved this Court for default judgment, which the Court entered on March 28, 2019.  *See* Motion for Default Judgment [Doc. 24] and Default Judgment [Doc. 29].

Finally, on April 19, 2019—more than 5 months after the complaint was filed and nearly a month after default judgment was entered—Wang moved to set aside the default judgment ("Motion") [Doc. 32].[1]  Well established law prohibits Wang from setting aside a final judgment after willfully ignoring this action for five months.

## III.   LAW AND ARGUMENT

### A.  Wang's Motion is Predicated on the Wrong Rule.

Contrary to what Wang argues, a motion to set aside final default judgment—and not merely an entry of default—is governed by Rule 60(b).  Indeed, Rule 55(c)—the standard cited by Wang—makes the distinction clear by expressly pointing to Rule 60(b) in circumstances such as this one.  Fed.  R.  Civ. P. 55(c) ("[t]he court may set aside an entry of default for good cause, and it **may set aside a final default judgment under Rule 60(b)**.")(Emphasis added).  There is no question that this Court entered default judgment on March 28.  *See* Doc. 29.  Therefore, Rule 60(b) should govern the Court's analysis of Wang's Motion.

---

[1] On April 22, 2019, Wang filed a First Corrected Motion to Set Aside Default Judgment [Doc. 33].

### B. Standard under Fed.R.Civ. 60(b).

It is well-established that Rule 60(b)(1) requires "a movant demonstrate mistake, inadvertence, surprise, or excusable neglect. In addition, to avoid frivolous litigation in default judgment cases, 'courts have established the further requirement that a movant demonstrate the existence of a meritorious defense.'" *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1445 (10th Cir.1983) (internal citation omitted).

As the Tenth Circuit has explained, "a workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure.   The threat of judgment by default serves as an incentive to meet this standard." *Id.* at 1444-1445 (10th Cir.1983) (internal citations omitted); *see also Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir.1970) (noting, "the trial court ought not reopen a default judgment simply because a request is made by the defaulting party; rather, that party must show that there was good reason for the default and that he has a meritorious defense to the action.").   Wang cannot demonstrate mistake, inadvertence, surprise, or excusable neglect, nor can he demonstrate the existence of a meritorious defense to Otter's claims.

### C. Wang's Failure to Respond to the Complaint was a Conscious Decision and Not the Result of Mistake, Surprise Or Excusable Neglect.

The Tenth Circuit has "repeatedly held that carelessness by litigants or their counsel is inconsistent with the grounds for relief under Rule 60(b)(1)." *White v. Cassey*, 10th Cir. No. 93-6220, 1994 U.S. App. LEXIS 19571, at *8 (July 28, 1994) (citations

omitted).  When a party simply misunderstands or fails to "predict the legal consequences of his deliberate acts [he] cannot later, once the lesson is learned, turn back the clock to undo those mistakes."  *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir.1999).

Wang's conduct was, at best, careless, and surely conscious.  He was personally served with a copy of the complaint and summons.  *See* Doc. 13.  The complaint identifies "Eddy Wang," personally, as a defendant.  *See* Doc. 01.  From October through December 2018, Otter sent Wang three separate letters—all of which were addressed to Eddy Wang personally and sent to his home address, warning him that Otter would file suit against him if he did not cease the unlawful sales of Otter products on the Amazon storefronts he operated.  Pensyl Dec. ¶ 9.  Moreover, after Wang's Answer deadline had passed but before Otter moved for default judgment, counsel for Otter emailed Wang. The email started with, "Mr. Wang," noted that Otter had filed a lawsuit against "**you**" and warned that if he did not respond, Otter would "move forward with obtaining a judgment against **you**."  *Id.*, Ex. E (emphases added).  Wang was also provided the request for entry of default and Plaintiffs' motion for default judgment.  *Id.* at ¶¶ 12-13.  Despite all this, Wang admittedly **did nothing**—he did not respond to Otter, he did not reach out to the Court and he did not retain counsel—until March 21, 2019, seven weeks after Otter received an entry of default and one week after Otter moved for default judgment.  *See* Declaration of Eddy Wang [Doc. 33-1] ("Wang Dec."), ¶ 12; Declaration of Ray Shahani [Doc. 33-2] ("Shahani Dec."), ¶ 9.  Wang's contention that he did not understand that he could be held personally liable (Wang. Dec. [Doc. 33-1], ¶ 11) is simply not credible in

light of the numerous instances in which he personally received notice that Otter would bring (and had brought) suit against him as an individual.

The Tenth Circuit's decision in *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.* is instructive.   In *Cessna*, the plaintiff obtained a default judgment against the defendants, Bielenberg Masonry Contracting, Inc. and Paul Bielenberg, personally.  Bielenberg moved to set aside default judgment under Fed.R.Civ.P. 60(b)(1) contending excusable neglect.   In his affidavit in support of the motion, Bielenberg declared that although he was "served with papers," he "didn't realize at the time that the complaint was against both the corporation and me personally and furthermore, I did not realize that any case against me personally could proceed regardless of the bankruptcy proceeding."  715 F.2d 1442, 1445 (10th Cir.1983).

The Tenth Circuit rejected Bielenberg's contention of "excusable neglect" and affirmed the grant of default judgment.   The Court explained, that they found it "highly unlikely that Bielenberg and his personal counsel did not know of the need to respond to Cessna's complaint. The record indicates that Bielenberg had sufficient familiarity with the concepts of personal and corporate liability to make it reasonable to assume he knew of his danger." *Id.* at 1446.  The Court continued:

> Finally, Bielenberg's statement that "I didn't realize at the time that the complaint was against both the corporation and me personally" strains credulity, particularly in light of the **separate service of the complaint on Bielenberg as an individual** and the **repeated warnings communicated to Bielenberg** and his personal attorney that Cessna would indeed hold him to his guaranty.  **Given these circumstances, it can reasonably be inferred that Bielenberg made a conscious decision not to defend** and is therefore not entitled to relief.

*Id.* at 1446-1447 (emphases added).

6

Like Bielenberg, Wang's own declaration demonstrates that he had sufficient familiarity with the concepts of personal and corporate liability to make it reasonable to assume he knew of his danger.  *See* Wang Dec. [Doc. 33-1] at ¶ 11 ("Since I do not do any business personally with Otterbox and Lifeproof products, it was my understanding that I was not personally liable for business conducted by my corporation.")  This Court, like the Court in *Cessna*, should reject Wang's "highly unlikely" explanation that he did not know that he needed to respond to the complaint.

Also like Bielenberg, Wang was served with the complaint as an individual and was repeatedly warned by Otter that they would hold him personally liable for trademark infringement, among other claims.  *See e.g.* Pensyl Dec. Exs. B-D.  In light of these facts, this Court should infer, as the *Cessna* court did with Bielenberg, that Wang "made a conscious decision not to defend and is therefore not entitled to relief."  *Cessna*, 715 2.d at 1447.

Indeed, Wang admits that when he "became aware of certain correspondence directed to [him] personally," he "immediately sought advice of his colleagues and fellow business people in the industry."  Wang Dec. [Doc. 33-1] ¶11.  Thus, Wang recognized that the correspondence he received warranted consultation.  Apparently, Wang did not bother to consult with an attorney.  This is not a mistake or excusable neglect.  Indeed, it is well established that failure to seek advice of counsel does not constitute "excusable neglect."  *Atchison, T. & S. F. R. Co. v. Matchmaker, Inc.*, 107 F.R.D. 63, 65 (D.Colo.1985) (citing *Cessna, supra* at 1446 and cases cited therein).  Like Bielenberg in

*Cessna*, Wang made a conscious decision not to defend this action. And like Bielenberg, Wang is not entitled to relief.[2]

Wang's reliance on *Zen & Art of Clients Server Computing, Inc. v. Res. Support Assocs.*, 06-cv-00239, 2006 U.S. Dist. LEXIS 101239 (D. Colo. June 15, 2006) is misplaced. In *Zen*, the defendant moved to set aside an **entry** of default, not a default judgment. When explaining what standard applied to defendant's motion, the court noted, "[t]his good cause standard under Rule 55(c) is a lesser standard than the excusable neglect standard required to obtain relief from judgment under Rule 60(b)." *Id.* at *4. Moreover, in *Zen*, the only defendant was a company. The company's CEO and registered agent contended that he failed to respond to the complaint on behalf of the company because he "believed that the company has not yet been properly served." Conversely, here, the only defendant named in the complaint and who was served was Wang, in his individual capacity. Unlike the CEO in *Zen*, Wang does not contend that he was not properly served. In *Zen*, the court also found it noteworthy that the Defendant filed its motion to set aside the clerk's entry of default "only ten days after default entered" because "[t]his quick response to remedy its mistake does not evidence a desire to delay

---

[2] In the Motion, Wang contends that once he finally retained Mr. Shahani, Mr. Pensyl should have given Mr. Shahani a warning that a motion for default judgment was pending. Motion [Doc. 33], 9. This claim is wrong as a matter of fact and law. Mr. Pensyl **did** inform Mr. Shahani of the pending motion for default. *See* Pensyl Dec. ¶ 14. Moreover, as this Court has previously noted, "Rule 55(b)(2) only requires notice where the party against whom judgment by default is sought has appeared in the action." *Atchison, T. & S. F. R. Co. v. Matchmaker, Inc.*, 107 F.R.D. 63, 66 (D.Colo.1985). Default Judgment was entered by this Court on March 28, 2019. *See* Doc. 29. Neither Wang nor his attorney appeared in this action until April 19, 2019. *See* Doc. 31. Mr. Pensyl had no obligation to notify Mr. Shahani of the pending motion even though he did so in any event.

litigation but, rather, provides further support for Defendant's contention that its failure to respond was an honest mistake." Wang failed to move with similar haste. Indeed, he did not move the set aside the clerk's entry of default **at all** and waited nearly one month after this Court entered default judgment to file his motion to set aside default judgment. *Zen* simply does not support Wang's contention that this Court should set aside its default judgment after Wang made the conscious decision not to defend this action.

### D.  Not Only Does Wang Have No Excuse for His Default, He Has No Meritorious Defenses to Otter's Claims.

Wang fails to raise a meritorious defense to any of Otter's claims. Indeed, he does not raise any defenses to Otter's claims for Unfair Competition, Trademark Dilution and Deceptive Trade Practices under Colo. Rev. Stat. §6-1-101 *et seq.* With respect to the remainder of Otter's claims—Trademark Infringement, False Advertising and Tortious Interference—Wang offers nothing more than conclusory, self-serving statements in his declaration and the declaration of his counsel. For example, Mr. Shahani contends, "I believe Defendants have a legitimate, reasonable and good-faith defenses to the substantive claims of the present lawsuit." The Tenth Circuit has made clear however that, "[i]n an attempt to determine the meritorious nature of a defense, the trial court must have before it more than mere allegations that a defense exists." *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir.1970). Because Wang has not offered sufficient evidence or law in support of his "defenses," he is not entitled to set aside the default judgment.

i. _When the Court granted Otter's motion for default judgment, it necessarily found that the Complaint was not defective._

Before granting default judgment in favor of Otter, the Court was required to find that the allegations and unchallenged facts "create a legitimate basis for the entry of a judgment." _Jones v. Wells Fargo Bank, N.A._, 2014 U.S. Dist. LEXIS 110560, at *8 (D. Colo. July 1, 2014).  Because the Court entered default judgment, it necessarily found that Otter's complaint formed a legitimate basis for judgment.  Wang's contentions that Otter's Complaint was "defective" or is inappropriately "filled with generalities and innuendo" runs contrary to the analysis the Court was required to, and did, in fact, make before granting default judgment.  _See_ Doc. 28.

ii. _Plaintiffs did not sue the wrong party._

The two Amazon storefronts at issue in this suit were operated anonymously. Pensyl Dec. ¶ 2.  Otter spent significant time and expense investigating the operator of the storefronts.  _Id._ ¶ 5.  Ultimately, Otter identified Wang as the operator of both storefronts.  _Id._ ¶ 6.  Otter did not identify any corporation or other legal entity connected to Eddy Wang or the "E&E Global" and "1to3shop-store" storefronts.  _Id._ ¶¶ 7-8.  Thus, at the time Otter filed its Complaint, it believed in good faith that Wang was the operator of the offending storefronts.  _Id._ at ¶ 10.

Wang's motion contends that E&E Global, Inc. should have been named as a Defendant in this matter because it is operator of the storefronts.  Motion [Doc. 33], 2. This contention appears to be false.  E&E Global, Inc. is a California corporation that is registered as an "Aerospace/Aviation, Engineering, Manufacturing" company in Valencia, California – a five hour drive from Mr. Wang.  Pensyl Dec. at ¶¶ 8, 17; Ex. H.  Li Zhongbo

is listed as the officer and director of E&E Global, Inc.  *Id.* There is no apparent affiliation between Wang and E&E Global, Inc.  *Id.*

In any event, if Wang believed E&E Global, Inc. was a necessary party, he should have moved to add E&E Global, Inc.as a defendant.  Instead, Wang ignored the complaint for more than three months.   Regardless of what he believed, Wang **had to do something**.  He did not and the Court properly granted default judgment against him.

> iii.  *The Otter products Wang sells do not come with the Otter warranty, are not subject to Otter's quality controls and are therefore likely to confuse customers.*

To succeed on its claims for trademark infringement, Otter must establish: (1) it has a protectable interest in the trademark; (2) defendant used an identical or similar mark in commerce; and (3) defendant has likely confused customers by using the mark. *See Derma Pen, LLC v. 4EverYoung Ltd.*, 773 F.3d 1117, 1120 (10th Cir. 2014); *Cleary Bldg. Corp. v. David A. Dame, Inc.*, 674 F. Supp. 2d 1257, 1270 (D. Colo. 2009).  Otter need **not** show that the goods Wang sold were counterfeit.[3]

Wang does not dispute that Plaintiffs have established the first and second elements of trademark infringement.   He instead argues that there is no customer confusion because the products he sells come with Otter's warranty and therefore are not materially different. [4]   That is false.  Otter's warranty is explicitly limited to products sold

---

[3] In his declaration, Wang states that, "[p]rior to this lawsuit, E&E Global has never been accused of selling counterfeit, gray market, 'seconds,' or stolen products."  Wang Dec. [Doc. 33-1] [Doc. 33-1] ¶ 7.  The Amazon reviews for the E&E Global storefront cited in the Complaint show that this is simply not accurate.  *See* Complaint [Doc. 01], ¶¶ 107, 109, 114-116.

[4] A "material difference" is any difference that "consumers would consider relevant to a decision about whether to purchase a product."  *Davidoff & Cie., S.A. v. PLD Int'l Corp.*,

11

by authorized dealers: "[t]his Limited Warranty will apply **only** to Products purchased from an Otter-authorized dealer that is subject to and follows Otter's quality controls." https://www.otterbox.com/en-us/warranty-full.html (emphasis added) ("Otter Warranty"). Pensyl Dec. ¶ 4.  Wang is not an authorized dealer.  Nor could Wang have believed in good faith that he was an authorized dealer.  Otter informed Wang as early as November 2018, in a letter delivered to his house, that he was not an authorized dealer.  Pensyl Dec. Ex. C.  The products Wang sells do not come with the Otter Warranty and are materially different.

Moreover, it is undisputed that the products sold by Wang are not genuine Otter products because they do not abide by and interfere with Otter's quality controls.  Wang does not even attempt to distinguish the well-established case law cited by Otter in support of this point.[5]  Consumers who purchase products from Wang think they are getting genuine Otter Products that come with the Warranty and comply with Otter's quality controls when they are not.  Thus, Wang is creating consumer confusion and infringing on the Otter Trademarks.

Wang's attempt to distinguish *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1071-73 (10th Cir. 2009) fails.  Wang seems to suggest that the Tenth Circuit did not recognize that a warranty could serve as a material difference for purposes of the first sale doctrine.  *See* Motion [Doc. 33], 13.  In *Beltronics*, however, the Tenth Circuit

---

263 F.3d 1297, 1302 (11th Cir. 2001). These differences need not be physical and the threshold for what constitutes a material difference is "low." *Societe Des Produits Nestle, S.A. v. Case Helvetica, Inc.*, 982 F.2d 633, 641 (1st Cir. 1992).

[5] *See* Motion for Default Judgment [Doc. 24], 8-9 n.5-6.

expressly recognized that at least two federal circuit courts had observed that "warranties or service commitments may constitute material differences," that "no federal circuit court [ ] has held or observed otherwise," and thus, the "district court did not commit an error of law in concluding that material differences may include the warranties and services associated with Beltronic's radar detectors." *Id.* at 1073.

Nevertheless, Wang argues that *Beltronics* is inapplicable because the warranty offered by the defendant in that case was different from the warranty offered by Beltronics, whereas here, Wang offers the same warranty as Otter. *See* Motion [Doc. 33], 14. The only warranty advertised on the products sold by Wang, however, was the "Otterbox Warranty." *See* Pensyl Dec. ¶ 3. As explained above, Otter's Warranty is explicitly limited to products purchased from an authorized Otter dealer. Since Wang is not an authorized dealer, the Otter Warranty does not apply to the products he sells. Accordingly, Wang's attempt to distinguish *Beltronics* falls flat.

Wang's contention that his products are not materially different because he "hasn't altered the packaging of Plaintiff's products" also misses the mark. *See* Motion at 13. As the Tenth Circuit has recognized, "physical material differences are not required to establish trademark infringement because trademarked goods originating from the trademark owner may have nonphysical characteristics associated with them, including services, such that the sale of similar goods lacking those associated characteristics may mislead the consumer and damage the owner's goodwill." *Beltronics*, 562 F.3d at 1073. As shown above, that is precisely the case here.

13

    *iv.* ***Because Wang's products do not come with the Otter Warranty, his***
         ***only defense to Otter's false advertising claim fails.***

Wang's only defense to Otter's claim for false advertising is that he did not make

a materially false or misleading representation of fact when he advertised that his

products came with the Otter Warranty because, in fact, his products came with the Otter

Warranty. *See* Motion [Doc 33], 12. As shown above, however, Wang's products are not

eligible for the Otter Warranty. The representations to the contrary that Wang made on

his Amazon storefronts are materially false and misleading.

    *v.* ***The evidence shows that contrary to Wang's contention, he had***
         ***notice of Otter's Reseller Agreements and therefore Wang has no***
         ***meritorious defense to Otter's claim for tortious interference with***
         ***contract.***[6]

Wang's purported defense to Otter's claim for tortious interference with contract is

that he had no knowledge of Otter's Reseller Agreements with which he interfered. The

evidence shows otherwise. The existence of Otter's Reseller Agreements and their

relevant terms were cited in multiple letters sent to Wang in November 2018. *See* Pensyl

Dec. Ex. C-D. Indeed, in a letter dated November 27, 2018, Otter informed Mr. Wang:

> Otter restricts the manner in which its Authorized Resellers and
> Authorized Distributors may sell Otter Products. Otter's Authorized
> Distributors are permitted to sell Otter products only to approved
> customers designated in their agreements. Otter's Authorized Resellers
> may sell Otter Products only to end-users.
>
> Because you are not an Authorized Reseller, any time you purchase
> products from an Otter Authorized Distributor, you are interfering with the
> Authorized Distributor's contract with Otter and causing it to breach that
> contract. Likewise, because you are not an end-user customer, any time

---

[6] Otter did not assert a breach of contract claim against Wang, and his argument that he
did not violate Otter's Reseller Agreements is irrelevant. *See* Motion [Doc. 33], 14.

> you purchase products from an Otter Authorized Reseller for purposes
> of resale, you are interfering with the Authorized Reseller's contract with
> Otter and causing it to breach that contract. **You now have clear notice
> of these restrictions.**

*Id.* Ex. C (emphasis added).

Wang had "clear notice" of the existence and relevant terms of Otter's Reseller

Agreements, his only articulated defense to Otter's claim for tortious interference fails.

## IV.   <u>CONCLUSION</u>

For the forgoing reasons, this Court should deny Wang's first corrected motion to

set aside default judgment and for extension of time to respond to complaint.

Respectfully submitted this 10th day of May, 2019.

By:     *s/ Arryn K. Miner*
             William D. Kloss, Jr. (Ohio Bar No. 0040854)
             Tyler B. Pensyl (Ohio Bar No. 0080649)
             Arryn K. Miner (Ohio Bar No. 0093909)
             Vorys, Sater, Seymour and Pease LLP
             52 East Gay Street
             Columbus, Ohio 43216
             Phone: (614) 464-6334
             Facsimile: (614) 719-5072
             Email: wdkloss@vorys.com
                    tbpensyl@vorys.com
                    akminer@vorys.com

             Martha L. Fitzgerald, #14078
             Brownstein Hyatt Faber Schreck, LLP
             410 Seventeenth Street, Suite 2200
             Denver, Colorado 80202-4432
             Phone: (303) 223-1472
             Email: mfitzgerald@bhfs.com

             *Counsel for Plaintiffs Otter Products, LLC and
             TreeFrog Developments, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 10, 2019, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF and will be served on all counsel of record.

*s/ Arryn K. Miner*
Arryn K. Miner