# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**Civil Action No. 18-cv-03198-CMA-SKC**

OTTER PRODUCTS, LLC, and
TREEFROG DEVELOPMENTS, INC.,

      Plaintiffs,

v.

EDDY WANG, and  JOHN DOES 1-10,

      Defendants.

---

## DEFENDANT'S REPLY TO RESPONSE TO
## MOTION TO SET ASIDE DEFAULT JUDGMENT
## AND
## FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT

---

## I.     INTRODUCTION

Defendant Eddy Wang (hereinafter "Defendant Wang") is originally from China, and his command of the English language is poor. While he may have received communications from Plaintiffs[1], he didn't understand the consequences of failing to timely respond, in part due to Plaintiff's contradictory and inconsistent prior communications.[2] The plain language of the Otterbox/Lifeproof warranty clearly states that the warranty "will apply only to Products purchased from an Otter-authorized

---

[1]As pointed out in Defendant's moving papers, numerous of Plaintiffs' written communications were sent to non-existent and long-expired addresses so of course he didn't receive those.

[2]Plaintiffs' letter of October 5, 2018 only made objection to Defendant's sale of products as "Certified Refurbished", but subsequent communications were directed to completely different issues.

dealer",which is exactly where the original products were purchased, and there was no way for Defendant to know the said Otterbox-authorized dealers were in breach of their agreement when they sold original Otterbox/Lifeproof product to Defendants' suppliers.[3] Finally, none of the cases cited by Plaintiffs hold that advertising a product for sale with a manufacturer's warranty without more is a trademark infringement.

## II.      THE NAME OF DEFENDANT'S CORPORATION IS E&E GLOBAL SOURCING

The actual name of Defendant's licensed California corporation in good standing is E & E GLOBAL SOURCING. As pointed out by Defendant's attorney, the confusion arose out of mixed communications between him and his client, but that the evidence attached to the declarations submitted herewith should resolve any question of remaining doubt in favor of Defendant. In any event, the original complaint filed by Plaintiffs fails to name the corporation, a necessary party, as a defendant.[4] Default judgment should be set aside, Defendant will stipulate to amend it's name.

## III.     DEFENDANT CAN PROVE IT PURCHASES ORIGINAL PRODUCTS

---

[3]As pointed out in the moving papers, Defendant had no direct contacts with Otterbox-authorized dealers who sold Otterbox/Lifeproof product to Defendant's brokers.

[4]Defendant contends that under the holding of *Hamilton v. Farmer Ins. Grp.*, Civil Action 14-cv-01211-WJM-MJW (D. Colo. Oct. 29, 2014), the Plaintiff should amend the complaint under Federal Rules of Civil Procedure Rule 15 (1)(B), as an amendment that relates back to the date of the original pleading, to add E&E GLOBAL SOURCING as a defendant. A similar case upheld a grant of summary judgment in favor of defendant on the grounds of lack of jurisdiction. The issue was whether FRCP Rule 15(1)( C ) allowed the plaintiff to amend his complaint in order to correct a failure to name or serve the correct party defendant within the statutory limitations period. The 10th Circuit Court of Appeals held that the federal rules do not so allow and the action was dismissed for failure to state a claim. *Johnson v. U.S. Postal Service*, 861 F.2d 1475, 1476 (10th Cir. 1989) While there is no issue of statute of limitations in the present case, Defendant contends that there is no jurisdiction because the proper defendant wasn't named in the complaint.

Attached to Eddy Wang's declaration filed herewith, the Court will find evidence that E&E GLOBAL SOURCING does in fact purchase original Otterbox/Lifeproof products from brokers who have purchased original Otterbox/Lifeproof pproducts from Otterbox/authorized dealers.

IV.     FEDERAL LAW SQUARELY CONTRADICTS PLAINTIFF'S POSITION

In California, which is where Defendant resides and conducts business, the First Sale Doctrine[5] completely shields defendants from liability for the mere resale of plaintiffs' products, notwithstanding any lack of original warranty.

> "[T]he Ninth Circuit precludes an infringement claim based on voided warranties alone. In *NEC Elecs. v. CAL Circuit*, the court granted summary judgment to competitors who resold a trademark owner's products, despite evidence that some customers "mistakenly thought" products were protected by a trademark holder's "servicing and warranties." *NEC Elecs. v. CAL Circuit Abco*, 810 F.2d 1506, 1508 (9th Cir. 1987). The Ninth Circuit explained that even if the competitors that resold the products had misled the customers about the servicing and warranties, the plaintiff's remedy was "in contract or tort, but not in trademark." Id. at 1510." *Huf Worldwide, LLC v. Wal-Mart Stores, Inc.*, CASE NO. 16cv751-LAB (WVG), at *3-4 (S.D. Cal. Feb. 28, 2017)

V.     10TH CIRCUIT AND ALL OTHER CITED LAW CAN BE DISTINGUISHED

In the 10th Circuit, the First Sale Doctrine states that those who resell genuine trademarks products are generally not liable for trademark infringement. *Beltronics*

---

[5]"Beginning with *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731 (1924), courts have consistently held that, with certain well-defined exceptions, the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product." *Sebastian Intern. v. Longs Drug Stores*, 53 F.3d 1073, 1074 (9th Cir. 1995) This is true even if the second sale is without the mark owner's consent. *Nexxus Prods. Co. v. CVS New York, Inc.*, 188 F.R.D. 11, 15 (D. Mass. 1999); *Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 61 (2d Cir.1992). The underlying rationale stems from the proposition that the resale of *genuine* products does not confuse consumers and therefore is not a concern of the Lanham Act. *See John Paul Mitchell Sys. v. Pete-N-Larry's, Inc.*, 862 F. Supp. 1020, 1024 (W.D.N.Y. 1994).

*USA, Inc. v. Midwest Inventory Distrib., LLC,* 562 F.3d 1067, 1071 (10th Cir. 2009). The

cases cited by Plaintiffs[6] and the *Beltronics* Court fall into three categories, i.e., cases

related to sales of materially different products, products sold without the

manufacturer's warranty, or sales of product outside a manufacturer's quality controls.

1.      CASES RELATED TO MATERIAL DIFFERENCES

In *Davidoff & Cie., S.A. v. PLD Int'l Corp.,* 263 F.3d 1297 (11th Cir. 2001) batch

codes on plaintiff's COOL WATER cologne were covered by white stickers, and batch

codes on the bottles themselves were obliterated with an etching tool leaving a mark on

the bottle opposite the DAVIDOFF COOL WATER printing. *Id.*, 1299. Here,

Defendant's merely sold Otterbox/Lifeproof cases in original packaging bearing original

serial numbers.

In *Societe Des Produits Nestle, S.A. v. Case Helvetica, Inc.,* 982 F.2d 633 (1st

Cir. 1992) a licensee sold "gray market" goods[7], i.e., chocolates manufactured and sold

in Venezuela by the plaintiff's licensee using a mark licensed for use in sales of Italian

chocolates by other licensees. *Id.*, 637, 641. Here, trademarks were applied by

Plaintiffs to Plaintiff's products which were then simply resold by Defendant.

2.      PRODUCTS SOLD WITHOUT A MANUFACTURER'S WARRANTY

In *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC,* 562 F.3d 1067 (10th

---

[6]The Court will note that only 1 of the total 16 cases cited by Plaintiffs related to these 3 categories of cases is a 10th Circuit decision, with 1 case being a decision of the District Court of Colorado alone.

[7]A gray market item, also known as a "parallel import," is a "foreign-manufactured good, bearing a valid United States trademark, that is imported without the consent of the United States trademark holder." *K Mart Corp v. Cartier, Inc.,* 486 U.S. 281, 285 (1988).

Cir. 2009) "the distributors either replaced each radar detector's original serial number label with a phony label or removed the original label altogether before shipping equipment ... [W]hen the distributors supplied [Defendant] with a radar detector bearing an original serial number label, [Defendant] removed the label prior to resale." *Id*., 1069. Here, no tampering with the label, serial number or packaging has been alleged, and the warranty provided to purchasers of Plaintiff's products was exactly the same as that offered by Plaintiff.

In *Bel Canto Design, Ltd. v. MSS HiFi, Inc.,* 837 F. Supp. 2d 208, 229-30 (S.D.N.Y. 2011) the Court found the defendant had "engaged in the practice of altering the serial numbers that are placed on the back of Bel Canto products during the manufacturing process before selling those products." *Id*., 212. Here, again, there is no allegation that Defendant altered in any way the serial numbers on Plaintiff's products.[8]

In *TracFone Wireless, Inc. V. Pak China Group Co.,* 843 F. Supp. 2d 1284 (S.D. Fla. 2012) the defendants were engaged in "unauthorized and unlawful computer unlocking or reflashing of TracFone Prepaid Phones" and "alteration of TracFone's copyrighted and proprietary software installed in the Phones". *Id.*, 1290. In our case, there is no product manipulation or alteration, no chip "reflashing", no telephone "unlocking" or no copyright infringement.

In *HM Elecs., Inc. v. RF Techs., Inc.,* 2013 U.S. Dist. LEXIS 201896 (S.D. Cal.

---

[8]The Court should rest assured that if the serial numbers on the Otterbox/Lifeproof products sold by Defendant were fake or not original, this would have been alleged by Plaintiffs in their prior communications with Defendant as well as in their Complaint, their papers moving for entry of default, and their papers moving for default judgment long ago.

Oct. 3, 2013), an interlocutory "Order Granting Plaintiff's Motion for Preliminary Injunction" having no precedential value at all, plaintiffs alleged defendant re-labeled HME products to pass them off as defendant's. "Plaintiff allege[d] that when repairing HME headset products, Defendant remove[d] the product's distinctive HME branded outer casing and eliminate[d] the HME serial number and other HME-identifying information ... then replace[d] the outer casing with a virtually identical casing that bears Defendant's logo, even though at times the product's circuit board and electronic components remain[ed] HME components ... Finally, Defendant reattache[d] HME's Federal Communication Commission ("FCC") number to the product now bearing Defendant's logo ... Plaintiff ... received for repair approximately 60 HME headsets re-cased and re-labeled with Defendant's logo." *Id*., *6. Here, Defendant has not altered the product, packaging or serial number and there is no allegation that Plaintiffs have received defective cases sold by Defendant for warranty replacement.

In *RFA Brands*, *LLC v. Beauvais*, No. 13-14615, 2014 U.S. Dist. LEXIS 181781 (E.D. Mich. Dec. 23, 2014), an interlocutory decision in a motion for summary judgment and not even precedential in Michigan, it was held "Plaintiffs assert[ed] that an inspection of the product received revealed that it was used, and not new, as had been represented, and ... the product had been returned to the warehouse as damaged or defective and should never have been re-sold to the public", the product had stickers on it not placed by plaintiffs, including a sticker placed by a particular retailer confirming an item was returned damaged or defective that should never have been resold to the

public, some of the goods were opened and improper packaged, and inspected inventory also could not be considered "new" products "because nearly all of the packaging showed signs of wear, sometimes significant." *Id.,* *3-4, *7.  Here, Plaintiffs have not alleged that used product was sold as "new" or that returned product was sold by Defendant, that Defendant altered packaging or damaged or defective merchandise.

3.      PRODUCTS SOLD OUTSIDE MANUFACTURER'S QUALITY CONTROLS

In *Zino Davidoff SA v. CVS Corp.,* 571 F.3d 238  (2d Cir. 2009) "Davidoff discovered that, in the case of 16,600 items in CVS's inventory, the UPCs on the packages and labels affixed to the bottle had been removed. The codes had been removed through a variety of techniques, including cutting the portion of the box or label exhibiting the UPC, using chemicals to wipe away the UPC on the label, and grinding away the bottom of the bottles to remove the UPC." *Id.,* 241-242. Here, Defendant hasn't altered packaging of Plaintiff's products.

In *Shell Oil Co. v. Comm. Petro. Inc.,* 928 F.2d 104 (4"^ Cir. 1991) the Court found "Shell requires its authorized distributors and jobbers to maintain storage facilities and transportation procedures that assure the integrity of the motor oils. Stringent quality control standards are necessary because the bulk lubricant goes through numerous tanks, tanker trucks, and pumps during the distribution process, and the oil can easily be contaminated by residuals." *Id.* 106. "Commercial discontinued using the actual trademarks on its customer invoices for Shell bulk oil sales and substituted the symbols "SRT" or "RT." However, when questioned by customers about the change,

Commercial readily confirmed that all oil billed under these designations was in fact "Shell Rotella T" motor oil." *Id.* In handling bulk oil, Commercial employed its own quality control standards, which were less stringent than Shell's ..." *Id.* "For example, Commercial hauls the subject oils immediately after hauling diesel fuel, without cleaning the tanker." *Id.* Here, there is no issue of changing the manufacturer's trademark or contamination of the Plaintiff's product.

*Warner-Lambert Co. v. Northside Dev. Corp.,* 86 F.3d 3 (2d Cir. 1996) related to the expiration dates of shipments of cough drops and cough suppressants which under normal storage conditions "usually remain of acceptable quality for up to 30 months". *Id.,* 5. "Warner-Lambert want[ed] the product sold to consumers within 24 months after manufacture." *Id.* The defendant "had purchased . . . large quantities of HALLS cough drops more than 24 months old. The cough drops . . . were not packaged in the original Warner-Lambert shippers and trays. Instead, they had been repackaged in plain white cardboard trays and in shippers that did not indicate the shelf life of the product." *Id.* Here obviously there are no allegations that Otterbox/Lifeproof cellphone cases were sold beyond their shelf life or repackaged and sold without an expiration date.

In *El Greco Leather Prods. Co. v. Shoe World, Inc.,* 806 F.2d 393 (2d Cir. 1986) no certificate of inspection was ever issued for 2 separate lots of a manufacturer's shoes, presumably due to quality control problems. *Id.*, 394. Here, all cellphone cases sold by Defendant were actually manufactured by Plaintiffs and all bore serial numbers.

In *Adolph Coors Co. v. A. Genderson & Sons, Inc.,* 486 F. Supp. 131 (D. Colo.

-8-

1980) the reseller of actual Coors beer failed to properly refrigerate the beer resulting in a loss of quality. "The distribution and sale of Coors beer by [defendant] over long periods of time absent refrigeration has caused a loss of the high quality and freshness of Coors beer ... resulting in the sale to the public of Coors beer in an unfit condition and inferior quality, all of which severely damages the good reputation of Coors beer and causes a loss of goodwill of Adolph Coors Company" <u>These facts simply don't apply to the case at hand.</u>

In *Harman Int'l Indus. V. Pro Sound Gear, Inc.,* 2018 U.S. Dist. LEXIS 69809, at *8 (C.D. Cal. April 24, 2018) the defendant advertised and sold plaintiff's products "with serial numbers that were removed and/or altered, and without a Harman consumer warranty." *Id*., *2. <u>Here, Defendant did not remove or alter serial numbers and did in fact sell cellphone cases with a consumer warranty which it also honored.</u>

In *Fender Musical Instruments Corp.* v. *Unlimited Music Ctr., Inc.,* 1995 U.S. Dist. LEXIS 15746, at *10 (D. Conn. Feb. 16, 1995) there were material differences between Japanese-made and American-made electric Fender guitars including lack of warranties, instruction manuals and service plans. *Id.,*\*3. <u>Here, all products sold by Defendant are original Otterbox/Lifeproof products, all come with warranties and instruction manuals, and Plaintiffs' products don't' come with "service plans".</u>

The case of *Heraeus KulzerLLC v. Omni Dental Supply,* 2013 U.S. Dist. LEXIS 91949, *16 (D. Mass. July 1,2013) involved sale of gray-market medical devices. The defendant couldn't verify where its wholesalers acquired Heraeus products as they

refused to divulge their origins, claiming that the information was a trade secret. Accordingly, the plaintiff was unable to track the dental products from their origin, did not know the conditions under which they were shipped and stored, or even whether the products were actually manufactured by plaintiff's affiliate. *Id.,* 13. <u>Here, Defendant has disclosed the origin of its products which are not gray-market good, evidence showing they came from Otterbox-authorized dealers.</u>

In *Caterpillar, Inc. v. Nationwide Equipment,* 877 F. Supp. 611, 616 (M.D. Fla. 1994) plaintiff granted defendant the right to assemble products overseas containing original Caterpillar components, not to market assembled products using the trademarks. Defendant was found liable for trademark infringement and breach of contract. *Id.*, 613-614. <u>Here, Defendant only resold originally marked products.</u>

VI.    CONCLUSION

The complaint doesn't even name the proper defendant and therefore the default judgment is likely a violation of Eddy Wang's due process rights. Not a single case, not even the sole case cited from the 10th Circuit, supports Plaintiff's position that reselling brand new goods in the original condition and packaging but without the manufacturer's original warranty is a trademark infringement. Defendant never communicated at all with Plaintiff's authorized distributors, so the conduct cannot amount to tortious interference with contract. Finally, products sold by E&E Global were under warranty because they were in fact purchased from an authorized distributor of Plaintiffs.

With all due respect, the default judgment should be set aside.

-10-

Respectfully submitted this 23rd day of May, 2019.

RAY K. SHAHANI ATTORNEY AT LAW

   _/S/ Ray K. Shahani_____
Ray K. Shahani, Esq. Reg. No. 160814
Oyster Point Marina Plaza
400 Oyster Point Blvd., Suite 518
South San Francisco, CA 94080
Telephone: (650) 348-1444
FAX: (650) 348-8655
E-mail: rks@attycubed.com
Attorney for Defendant Eddy Wang

-11-