**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 18-cv-03198-CMA-SKC**

OTTER PRODUCTS, LLC, and
TREEFROG DEVELOPMENTS, INC.,

      Plaintiffs,

v.

EDDY WANG, and JOHN DOES 1-10,

      Defendants.

**DEFENDANT'S RESPONSE TO
(1) MOTION FOR CONTEMPT AND (2) ORDER TO SHOW CAUSE**

I.     INTRODUCTION

Defendant Eddy Wang (hereinafter "Defendant Wang") was confused about the status of the Default Judgment and Motion to Set Aside Default Judgment. As a result, he was under the impression that the Permanent Injunction had been lifted and that he would be allowed to liquidate his remaining inventory of Otter and Lifeproof cellphone cases. Defendant's companies' sales of new, originally packaged and unopened products made by Plaintiffs were not an intentional violation of this Court's outstanding Permanent Injunction, and therefore the Motion for Contempt should be denied.

II.    APOLOGY

Both Defendant and his counsel sincerely apologize to the Court and to Plaintiffs for Mr. Wang's companies' continuing to sell Otter and Lifeproof products on Ebay after

the Default Judgment was entered. In his declaration, Mr. Wang states that it was never his intention to deceive the Court or to deceive Plaintiffs, or to violate any Court order in any way.

The Court is respectfully requested to accept Defendant's apology and not find him in contempt of Court.

III.     COMPLIANCE WITH LOCAL RULE 7.1

Prior to receiving Plaintiffs' Motion for Contempt and the Court's OSC, Shahani was completely unaware that Mr. Wang's companies had started selling Otter and Lifeproof products on Ebay. At no time prior to filing their Motion for Contempt did counsel for Plaintiffs ever advise Shahani that Defendant's companies were selling Plaintiffs' products on Ebay.

Needless to say, had counsel for Plaintiffs ever advised Shahani prior to filing their motion that Defendant's companies were selling Plaintiffs' products online in violation of the Court's Default Judgment, Shahani would have immediately contacted Defendant and, as Shahani states, "that activity would have stopped immediately." Given the requirement of District Court of Colorado Local Rule 7.1 that counsel meet and confer prior to the filing of a motion, the matters of violation of the injunction and contempt could have been resolved informally within 1 day.

In any event, Plaintiffs' motion should be denied for failure to comply with Local Rule 7.1.

IV.     BASIS OF REASONABLE CONFUSION AND INNOCENT VIOLATION

On exactly the same day that Amazon deactivated Defendant's companies' storefronts selling Otter and Lifeproof products, the Default Judgment was entered in this case. Mr. Wang notified his attorney that Amazon had closed his companies' storefronts, and at precisely that time counsel Ray K. Shahani advised Defendant not to attempt to sell any of those products on Amazon until this dispute was resolved.

Also, at that time Shahani went through each of the terms of the Default Judgment and explained to Defendant that Defendant was restricted from selling Otter and Lifeproof products on the internet. According to Shahani's declaration also filed in support of this Response, his conversations with Defendant were primarily involved with selling products on Amazon. Shahani and Wang had a clear understanding that Defendant would not set up any new corporations or any new storefronts on Amazon to avoid the restrictions imposed by the Permanent Injunction, and he believes that Mr. Wang fully complied with those restrictions.

However Shahani don't ever recall discussing sales of Plaintiffs' products on any other websites, probably because the Plaintiffs seemed to focus their Motion for Default Judgment exclusively on Defendant's sales via the Amazon marketplace. Shahani made it very clear to Mr. Wang that continued sales of Plaintiffs' products on Amazon would constitute contempt of Court.

On around April 19, 2019 at the time Defendant filed it's Motion to Set Aside Default Judgment, Shahani explained to Defendant that the injunction would remain in place until the Court set aside the default judgment, but that given the timing of the

motion for default judgment and ensuing entry of default judgment, he didn't think it would take more than a few weeks following briefing on the motion to learn the results of the motion to set aside the default judgment. In his Declaration, Shahani explained this was because the Default Judgment of March 28, 2019 was granted 14 days after the Motion for Default Judgment was filed on March 14. Shahani also explained to Defendant that if the Default Judgment was to be set aside, that Plaintiffs could still request a preliminary injunction but that they would likely be required to post a bond to obtain a restraining order or preliminary injunction. It is apparent that Defendant did not understand the procedural ramifications of the Default Judgment and Permanent Injunction, the Motion to Set Aside Default Judgment and ensuing briefing, and any following temporary injunction or restraining order that might eventually be ordered.

In follow up conversations with Defendant over the week following the Court's OSC, it became clear to Shahani that his client was confused as to the status of the Motion to Set Aside Default Judgment and the related Permanent Injunction. Given the interplay between the requirements for a preliminary injunction requested prior to final judgment and the permanent injunction that is currently in place, it is reasonable that Defendant didn't realize that the Permanent Injunction was still in place.

V.   PROMPT RESPONSE BY DEFENDANT

Shahani states that he was out of the office on Thursday, June 20, 2019. Upon returning to his office on Friday, June 21 and learning about the Motion for Contempt, Shahani states that he immediately placed a telephone call, sent an email and sent text

messages to his client advising him to immediately stop selling Otter and Lifeproof products anywhere, including all online marketplaces or anywhere else. Defendant was out of town that day, but he promised Shahani that by Sunday afternoon, June 23, all of the Ebay listings for Otter and Lifeproof products would be removed. Defendant also advised Shahani that he was not selling Plaintiffs' products on any other internet marketplaces or anywhere else, and that he won't do that any time in the future until and unless authorized by Plaintiffs, or otherwise permitted by the Court.

VI.   RELATIVELY SMALL SALES VOLUME IN VIOLATION OF INJUNCTION

Defendant has estimated that between May 3 and June 21, 2019, his companies sold not more than about 150 Otter and/or Lifeproof products for a total amount of about $2156.55 in gross sales. Of that amount, their total profit was only about $450. Defendant was in the process of liquidating his inventory, which resulted in very little proceeds and that given his overhead he may have actually lost money on those sales. A spreadsheet showing Defendant's companies' sales on Ebay between May 3 and June 21, 2019 is attached to Mr. Wang's declaration filed herewith as Exhibit A.

VII.   OTTER STILL PERMITS LICENSED RESELLERS TO LIQUIDATE INVENTORY

According to information obtained by Defendant, Otter and LIfeproof Authorized Distributors and Resellers are still liquidating their inventories of new and used Otter and Lifeproof products to Defendants' prior vendors. This seems extremely unfair and discriminatory.  As was asserted as fact with supporting evidence in the Motion to Set Aside Default Judgment, some of these distributors or resellers of Otterbox and

Lifeproof products include nationwide telecommunications companies and major retailers including US Cellular (which owns and operates the fifth-largest wireless telecommunications network in the United States), Sprint, Verizon, Best Buy, etc. Defendant has personal knowledge that E&E Global's brokers are still acquiring products in large quantities directly from these "authorized" distributors and resellers of Otterbox and Lifeproof products, often via auction, as closeout, liquidation, excess inventory and overflow stock. It is understandable that Plaintiffs cannot sue all unauthorized resellers of their products simultaneously, but it seems inherently discriminatory for Plaintiffs not to take action against their own Authorized Resellers for violation of their contractual obligations and to permit their authorized distributors to profit on the one hand, while challenging the right of innocent purchasers of these products to resell them as they are entitled to under the First Sale Doctrine.

As argued previously, Defendant never removed or altered serial numbers, repackaged products, sold used products or modified original products sold through its Amazon storefronts, and pending this Court's finding to the contrary, Defendant still believe that its companies have the right to resell original, authentic product in original condition under the widely accepted First Sale Doctrine.

Finally, counsel for Defendant has voiced grave concerns regarding Plaintiffs' business practices. Defendant has made numerous settlement offers to Plaintiffs, but they refuse to settle. In particular, Plaintiffs will require a full release of all of their agents including Authorized Otter and Lifeproof Resellers and Distributors, yet they

maintain that sales of liquidated inventory by their licensed Resellers and Distributors would be a breach of their license agreements. It should be obvious to the casual viewer that Plaintiffs are aware of this common practice by their licensed Authorized Resellers and Distributors, yet have taken no steps to prevent it. Said Resellers and Distributors include multinational corporations such as Sprint, Verizon, Best Buy, etc., and it is respectfully urged that this amounts to an unfair business practice.

VIII.   CASE LAW CITED DOES NOT DEFINE INTENTIONALITY OR WILLFULNESS

In the central case relied upon by Plaintiffs, *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), "the court noted that the alleged sanctionable conduct was that Chambers had (1) attempted to deprive the court of jurisdiction by acts of fraud, nearly all of which were performed outside the confines of the court, (2) filed false and frivolous pleadings, and (3) "attempted, by other tactics of delay, oppression, harassment and massive expense to reduce [NASCO] to exhausted compliance."  None of that conduct is alleged or exists in the present case.

The case *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240 (1975) has nothing to do with civil contempt. Nor is there any discussion or description of what could or does amount to intentional or "willful disobedience" of a Court's order.

Similarly, the case of *Fleischmann Corp. v. Maier Brewing*, 386 U.S. 714 (1967) merely stands for the proposition that in the context of intentional trademark infringement where the issue is "special'" damages, i.e., attorneys fees, willful disobedience of a Court's order can give rise to sanctions. There is no analysis of what

makes conduct "willful" or "intentional", particularly in the context of a claim of contempt.

Finally, the case of *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 43 S. Ct. 458 (1923) is cited for the proposition that "a court's discretion to determine the degree of punishment for contempt permits the court to impose as part of the fine attorney's fees representing the entire cost of the litigation". However this arcane, barely intelligible case has nothing to do with trademark infringement and there is no discussion at all about what amounts to "willful" or Intentional" conduct.

Thus, this Court is left to decide whether in fact the conduct of Defendant arises to the level of "intentional" or "willful" disobedience of the Court's order of Default Judgment. While there is no doubt that the sales via Ebay were conducted post-judgment, Defendant Wang has stated under penalty of perjury that he was under the impression that the permanent injunction had been lifted and that there was no prohibition on liquidating remaining inventory. There was no intent to profit. There was no intentional violation of the Court's order. Defendant's confusion was brought about by his feeble understanding of the interplay between the requirements for obtaining a restraining order and/or temporary injunction on the one hand and the steps involved in setting aside the default judgment and obtaining one's day in court. Defendant clearly made the wrong decision, but that mistake was innocent and the benefit he achieved was negligible.

IV.   DEFENDANT'S INVENTORY SHOULD NOT BE SURRENDERED

With all due respect, Defendant is extremely wary about turning over all of its unsold inventory of Otter and Lifeproof product. Defendant has agreed to stop selling and/or liquidating its inventory, but there are good reasons why this inventory should not be

returned to Plaintiffs.

As this Court will appreciate, this inventory was purchased innocently from third parties, all of whom continue to sell liquidated inventory of Plaintiffs. Stickers and labels affixed by Plaintiffs as well as by their licensed Authorized Resellers are proof that the product is not counterfeit. This unsold inventory is evidence that it was purchased from licensed resellers, and therefore can be used to support a claim by Defendant against these licensed resellers for breach of contract, unfair competition, false advertising, etc.

Plaintiffs in this action have completely ignored Defendant's claim that the real culprit here is their own Authorized Resellers. If this action is terminated before Defendant has a chance to vindicate himself, Defendant's evidence must be preserved for future litigation.

## X.     CONCLUSION

Defendant's mistaken belief that the permanent injunction was no longer in effect and that he was entitled to liquidate his inventory through Ebay should not subject him to sanctions. Defendant's confusion and lack of sophistication related to legal procedures should not be sanctionable. Defendant is willing to forfeit the $2156.55 that he earned selling his inventory at slightly more than cost.

With all due respect, this Court is respectfully requested to deny the Motion for Contempt and find Defendant Eddy Wang not in contempt. The Court is also respectfully requested to set aside the Default Judgment and permit Defendant Eddy Wang to file his response to the Complaint in order to seek a judicial review of his as well as Plaintiffs' business practices related to reselling new, unaltered yet liquidated, original products in original packaging.

Respectfully submitted this 7th day of July, 2019.

                              RAY K. SHAHANI ATTORNEY AT LAW

                              */S/ Ray K. Shahani*

                              Ray K. Shahani, Esq. Reg. No. 160814
                              Oyster Point Marina Plaza
                              400 Oyster Point Blvd., Suite 518
                              South San Francisco, CA 94080
                              Telephone: (650) 348-1444
                              FAX: (650) 348-8655
                              E-mail: rks@attycubed.com
                              Attorney for Defendant Eddy Wang