IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 18-cv-03198-CMA-SKC

OTTER PRODUCTS, LLC, and
TREEFROG DEVELOPMENTS, INC.,

    Plaintiffs,

v.

EDDY WANG, and
JOHN DOES 1-10,

    Defendants.

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CONTEMPT**

    This matter is before the Court on Plaintiffs Otter Products, LLC and Treefrog Developments, Inc.'s Motion for Contempt (Doc. # 38). On June 21, 2019, the Court ordered Defendant Eddy Wang to show cause as to why he should not be held in contempt for violating the Court's Order granting Plaintiffs' Motion for Default Judgment and entering a Permanent Injunction (Doc. # 28) and why remedial and/or punitive sanctions should not be entered against him. (Doc. # 39.) Defendant responded to Plaintiffs' Motion for Contempt and the Court's Order on July 5, 2019. (Doc. # 40.) Plaintiffs replied to Defendant's Response. (Doc. # 41.) For the following reasons, the Court GRANTS IN PART Plaintiffs' Motion for Contempt.

# I. BACKGROUND

The Court provided a thorough recitation of the factual and procedural background in this case in its Orders granting Plaintiffs' Motion for Default Judgment and Permanent Injunction (Doc. # 28) and denying Defendant's Motion to Set Aside Default Judgment and for Extension of Time to Respond to Complaint (Doc. # 42). Those Orders are incorporated herein by reference, and the facts will be repeated only to the extent necessary to address the instant Motion.

On December 13, 2018, Plaintiffs filed their Complaint asserting various trademark infringement and unfair competition claims under 15 U.S.C. §§ 1114, 1125(1) and the common law (Doc. # 1 at 38–57.) Plaintiffs also requested a permanent injunction to prevent Defendant and his various agents from continuing to infringe upon Plaintiffs' trademarks. (*Id.* at 57–58.) Pursuant to Federal Rule of Civil Procedure 12, Defendant was required to answer or otherwise respond to Plaintiffs' Complaint by January 16, 2019. Fed. R. Civ. P. 12(a)(1)(A)(i). Defendant did not answer or respond.

On January 31, 2019, Plaintiffs moved for entry of default by the Clerk of the Court (Doc. # 16), and on February 1, 2019, the Clerk entered a default (Doc. # 17). On March 14, 2019, Plaintiffs filed their Motion for Default Judgment and Permanent Injunction as to Defendant. (Doc. # 24.) Once again, Defendant failed to answer or respond to Plaintiffs' Complaint. On March 28, 2019, the Court issued its Order granting Plaintiffs' Motion for Default Judgment and Permanent Injunction ("Permanent Injunction") (Doc. # 28), and, pursuant to that order, the Clerk entered that default judgment in favor of Plaintiffs and against Defendant (Doc. # 29).

The Permanent Injunction provided:

[T]he Court issues a permanent injunction enjoining Wang and any of his employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Want and all of those in active concert and participation with Wang (the "Enjoined Parties) as follows. The Enjoined Parties are:

a. Prohibited from advertising or selling all Otter Products or products bearing the Otter Trademarks through any Amazon storefront, including, but not limited to, the Amazon storefronts currently named "1to3shop-store" and "E&E Global;"

b. Prohibited from advertising or selling, via the Internet or otherwise, all Otter products or products bearing the Otter Trademarks;

c. Prohibited from using any of the Otter Trademarks in any manner, including advertising on the Internet;

d. Prohibited from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all Otter Products as well as any products bearing any of the Otter Trademarks;

e. Prohibited from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Otter Trademarks including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Wang has sold bearing these trademarks;

f. Required to take all action to remove from the Enjoined Parties' websites or storefronts any reference to any of Otter Products, or any of the Otter Trademarks;

g. Required to take all action, including but not limited to, requesting Internet search engines (such as Google, Yahoo!, and Bing) to remove from the Internet any of the Otter Trademarks which associate Otter Products or the Otter Trademarks with the Enjoined Parties or the Enjoined Parties' websites or storefronts; and

h. Required to take all action to remove unauthorized Otter Trademarks from the Internet, including from Amazon.

> Pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure, this Order is binding upon the following persons who receive actual notice of it: the parties, the parties' officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with the parties or the parties' officers, agents, servants, employees, and attorneys.

(Doc. # 28 at 16–17.)

More than three weeks after the Court issued the Permanent Injunction, Defendant responded to the litigation for the first time and requested that the Court set aside the Default Judgment.[1] (Doc. ## 32, 33.) It is undisputed that Defendant had actual notice of the Permanent Injunction. (Doc. ## 32, 33, 36-1 at ¶ 15, 40-1.)

On June 20, 2019, Plaintiffs filed their Motion for Contempt. (Doc. # 38.) In support thereof, Plaintiffs represent that on or around June 18, 2019, Plaintiffs' counsel discovered that Defendant was affiliated with two companies selling thousands of Otter products or products bearing the Otter trademarks (collectively, the "Otter Products") through eBay. (*Id.* at 2–3, Doc. # 38-1 at ¶¶ 2–5.) Plaintiffs contend that Defendant's actions constitute a violation of the Permanent Injunction and warrant various sanctions. (Doc. # 38 at 3–4, 9.)

Defendant filed his response to Plaintiffs' Motion for Contempt and the Court's Order to Show Cause on July 5, 2019. (Doc. # 40.) In his Response, Defendant argues that, although his conduct may have violated the Permanent Injunction, such conduct was not an **intentional** violation. (*Id.* at 1–2, 5, 7–8.) Notwithstanding whether Defendant **intended** to violate the Permanent Injunction, he "is willing to forfeit the

---

[1] On August 12, 2019, the Court denied Defendant's request to set aside the Default Judgment. (Doc. # 42.)

4

$2156.55 that he earned selling his inventory at slightly more than cost." (*Id.* at 9.) Defendant also ceased selling Otter Products on all internet platforms. (*Id.* at 4–5.)

On July 10, 2019, Plaintiffs replied to Defendant's Response. (Doc. # 41.) Plaintiffs assert that, after meeting their burden to establish that Defendant should be held in contempt, Defendant failed to show that he either complied with or that he could not comply with the Permanent Injunction. (*Id.* at 1–2.) Moreover, Plaintiffs aver that Defendant's violation of the Permanent Injunction was intentional because that order contained "clear and unambiguous" language prohibiting Defendant from selling any and all Otter Products "via the Internet or otherwise." (*Id.* at 3–4.) For the following reasons, the Court agrees with Plaintiffs and grants in part their Motion for Contempt.

## II. LEGAL STANDARD

Federal district courts have inherent power[2] to "impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (internal quotation omitted). It is apodictic that the "power to punish for contempts is inherent in all courts.'" *Id.* (quoting *Ex parte Robinson*, 19 Wall. 505, 510 (1874)). "This power reaches both conduct before the court and that beyond the court's confines, for '[t]he underlying concern that gave rise to the contempt power was not . . . merely the disruption of court proceedings. Rather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience

---

[2] Additionally, 18 U.S.C. § 401 provides that district courts have "power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . (3) Disobedience or resistance to its lawful . . . order . . . ." 18 U.S.C. § 401(3).

interfered with the conduct of trial.'" *Id.* (quoting *Young v. United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 798 (1987)).

"Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers,* 501 U.S. at 44. "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44–45. Indeed, "a court may assess attorney's fees as a sanction for the 'willful disobedience of a court order.'" *Id.* at 45 (citing *Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 258 (1975)). "Thus, a court's discretion to determine '[t]he degree of punishment for contempt' permits the court to impose a part of the fine attorney's fees representing the entire cost of the litigation." *Id.* (quoting *Toledo Scale Co. v. Computing Scale Co.,* 261 U.S. 399, 428 (1923)).

In a motion for civil contempt, plaintiffs have the "burden of proving, by clear and convincing evidence, that a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order." *United States v. Ford*, 514 F.3d 1047, 1051 (10th Cir. 2008) (quotation marks and citation omitted). Once plaintiffs make that showing, the burden then shifts to the defendant to "show either that he complied with the order or that he could not comply with it." *Id.* (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)).

"The district court can impose a sanction 'to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance[.]'" *Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1239–40 (10th Cir. 2018) (quoting *O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1211 (10th Cir. 1992))

6

(citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193 (1949) (observing that district court may order contemnors "to pay the damages caused by their violations of the decree")). "The amount of the compensatory sanction must be based upon the 'actual losses sustained as a result of the contumacy.'" *Id.* at 1240 (quoting *Perfect Fit Indus v. Acme Quilting Co.*, 646 F.2d 800, 810 (2d Cir. 1981)). "Therefore, a direct causal relationship must exist between the amount of damages and the violation of an injunction." *Id.*

Although the United States Court of Appeals for the Tenth Circuit has "not articulated a precise test for causation in this context," it is "guided by the Supreme Court's recent opinion in *Goodyear Tire & Rubber Co. v. Haeger*[.]" *Id*. In *Goodyear Tire & Rubber Co.*, the Supreme Court reviewed a district court's order requiring an offending party to pay the non-offending party's legal fees and held that the sanction must be limited to the "fees the innocent party incurred solely because of the misconduct—or put another way, to the fees that party would not have incurred but for the bad faith." 137 S. Ct. 1178, 1183–84 (2017). The Supreme Court "characterized this causal connection as a 'but-for test.'" *Paragon Contractors Corp.*, 884 F.3d at 1240 (quoting *Goodyear Tire & Co.*, 137 S. Ct. at 1184).

### III. ANALYSIS

### A. WHETHER DEFENDANT VIOLATED THE PERMANENT INJUNCTION

The Permanent Injunction prohibited Defendant and his various agents, including "any and all other entities owned or controlled by Wang" from "selling **via the Internet or otherwise**, all Otter Products or products bearing the Otter Trademarks" (Doc. # 28

at 16, ¶ (b) (emphasis added)) and "selling [or] offering to sell . . . any and all Otter Products as well as any products bearing any of the Otter Trademarks" (*id.* at 17, ¶ (d)).

In the instant case, Defendant incontrovertibly violated the Permanent Injunction. Indeed, it is not disputed that "a valid court order existed" (Doc. # 28) and that Defendant "had knowledge of the order" (Doc. ## 32, 33, 36-1 at ¶ 15, 40 at 3, 40-1 at ¶¶ 4–5, 40-2 at ¶ 3). *Ford*, 514 F.3d at 1051. With respect to the third element, the Court is satisfied that Plaintiffs proffered clear and convincing evidence establishing that Defendant disobeyed the Permanent Injunction.

In their Motion for Contempt, Plaintiffs provided evidence that, while the Permanent Injunction was binding upon Defendant, Defendant sold thousands of Otter Products on eBay's internet platform through the guise of two businesses. (Doc. # 38 at 2–3.) The first business, "cosplay-party," was a "seller account" on eBay that was the source of sales for "nearly 1000 Otter products." (*Id.* at 2.) A search of "Cosplay Party" in the California Secretary of State's website retrieved a "Statement of Information" document providing that Defendant Wang is the Chief Executive Officer, Secretary, Chief Financial Officer, and Director of Cosplay Party. (*Id.* at 2, Doc. # 38-1 at ¶ 5.)

The second business, "1 To 3 Shop" was also a "seller account" on eBay that was the source of sales for "over 1100 Otter products." (Doc. #38 at 2.) In addition to sharing the same Amazon storefront name subject to Plaintiffs' Complaint, the "1 To 3 Shop" eBay "seller account" was also linked to the "same contact address as 'cosplay-party,'" 200 Valley Drive, Unit 41 Brisbane, CA 94005-1260, both of which are identical to the address Defendant used for his "1to3shop-store" Amazon storefront. (*Id.* at 2–3.)

Plaintiffs' evidence undoubtedly shows that Defendant operated "cosplay-party" and "1 To 3 Shop" eBay seller accounts to sell and offer to sell Otter Products in contravention of the Permanent Injunction. (Doc. # 28 at 16, ¶ (b), 17, ¶ (f).) Thus, Plaintiffs have proven that Defendant disobeyed the Court's Permanent Injunction.

The burden now shifts to Defendant to prove that he either complied with or could not comply with the Permanent Injunction. *Ford*, 514 F.3d at 1051. He cannot. As a preliminary matter, Defendant does not deny that his conduct violated the Permanent Injunction. (Doc. # 40 at 1–2.) Defendant admitted that "Mr. Wang's companies' continu[ed] to sell Otter and Lifeproof products on [e]Bay after Default Judgment was entered." (*Id.*) Moreover, Defendant concedes that his companies earned "a total amount of about $2156.65 in gross sales" and "$450" in total profit in violation of the Permanent Injunction. (*Id.* at 5.) As such, Defendant can neither show that he did not violate nor that he could not comply with the Permanent Injunction.

Furthermore, the Court is unpersuaded by Defendant's argument that he did not **intentionally** violate the Permanent Injunction. (*Id.* 3–4, 7–8.) Defendant suggests that "[t]here was no intentional violation of the Court's order" because the violation was a product of "confusion [that] was brought about by his feeble understanding of the interplay between the requirements for obtaining a restraining order and/or temporary injunction on the one hand and the steps involved in setting aside the default judgment and obtaining one's day in court." (*Id.* at 8.) Defendant's explanation strains common sense. Defendant's counsel, Mr. Ray Shahani, represented that he "went through each of the terms of the Default Judgment and explained to Defendant that Defendant was

9

restricted from selling Otter and Lifeproof products on the internet." (*Id.* at 3; Doc. # 40-2 at ¶ 3.) Therefore, it was untenable for Defendant to believe that he could operate two eBay seller accounts to sell Otter Products on eBay, an internet platform, without contravening the Permanent Injunction.

Moreover, after Defendant filed his Motion to Set Aside Default Judgment (Doc. # 33), Mr. Shahani "explained to Mr. Wang that the **injunction would remain in place** until the Court set aside the default judgment[.]" (Doc. # 40 at 3–4; Doc. # 40-2 at ¶ 7 (emphasis added).) That Mr. Shahani provided an estimate for when the Motion to Set Aside the Default Judgment might be resolved does not excuse Defendant from complying with the Permanent Injunction. (Doc. # 40 at 4; Doc. # 40-2 at ¶ 7.) Because the Court provided no indication that the Default Judgment was set aside, there was no reason for Defendant's alleged "confusion" as to whether he was permitted to sell Otter Products on the internet. He was not. Thus, the Court rejects Defendant's argument and finds that Defendant's violation of the Permanent Injunction was intentional.

Accordingly, Defendant's operation of eBay seller accounts to sell the Otter Products constitutes an act of contempt.

## B. COMPENSATORY CONTEMPT SANCTIONS

As a sanction for Defendant's contumacy, Plaintiffs seek "(1) disgorgement of all profits made on the sale of Otter products since the Court's March 28 Order; (2) an award of the attorneys' fees [Plaintiffs] incurred in litigating this action, and (3) an order requiring him and the Enjoined Parties to return all Otter products and products bearing the Otter Trademarks to [Plaintiffs]." (Doc. # 38 at 4–5.) Although Defendant is willing to

forfeit $2,156.55 to Plaintiffs for the amount that he earned selling the Otter Products in violation of the Permanent Injunction, Defendant argues that his "confusion and lack of sophistication related to legal procedures should not be sanctionable." (Doc. # 40 at 9.) The Court disagrees.

Throughout this litigation, Defendant has demonstrated a lack of respect and care for legal rules and procedures. (*See* Doc. # 42.) Instead, it is apparent that Defendant's approach is to obey the adage, "act first and ask for forgiveness later." The Court concludes Defendant's approach and conduct are sanctionable.

Given that Defendant is now compliant with the Permanent Injunction, the Court finds that compensatory sanctions are warranted. As an initial matter, the Court awards the amount of gross sales earned by Defendant in connection to selling Otter Products through eBay seller accounts after the Permanent Injunction was entered on March 28, 2019. (Doc. # 28.) Defendant declares under oath that the amount of gross sales amounted to $2,156.55. (Doc. ## 40 at 9, 40-1 at ¶ 6.) At this time, the Court is unaware of whether Plaintiffs dispute this amount. Thus, the Court awards Plaintiffs the amount of $2,156.55.[3]

Next, the Court considers Plaintiff's request for an award of attorney fees for the entire action. Based on the Tenth Circuit's *Paragon Contractors Corp.* decision, the Court looks to the Supreme Court's *Goodyear Tire & Co.* decision for guidance on what

---

[3] As addressed in detail below, if Plaintiffs dispute the amount of total gross sales, Plaintiffs will have leave to seek discovery from Defendant on the narrow issue of calculating the total amount of gross sales earned by Defendant as a result of his violating the Permanent Injunction.

attorney fees may be necessary to compensate Plaintiffs for damages incurred as a result of Defendant's contempt. *Paragon Contractors Corp.*, 884 F.3d at 1240 (citing *Goodyear Tire & Co.*, 137 S. Ct. at 1184). Under that precedent, "a direct causal relationship must exist between the amount of damages and the violation of an injunction." *Id.*

In the instant case, the Court finds that an award of attorneys' fees for the entire litigation is excessive and does not bear a direct causal relationship with Defendant's violation of the Permanent Injunction. As such, Defendant shall pay Plaintiffs their reasonable attorney fees, costs, and expenses for their efforts in briefing Plaintiffs' Motion for Contempt and the reply brief in support thereof.

With respect to Plaintiffs' final request that Defendant "return all Otter products and products bearing the Otter Trademarks to" Plaintiffs, the Court agrees that such a remedy is necessary to ensure that the Defendant no longer infringes upon Plaintiffs' trademarks. (Doc. # 38 at 9.) 15 U.S.C. § 1118 provides that in any action arising under the Lanham Act "in which a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, [or] a violation under Section 1125(a)[,]" the court may order that "all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the defendant, bearing the registered mark or, in the case of a violation of section 1125(a) of this title[,] . . . . the word, term, symbol, device, combination thereof, designation, description, or representation that is the subject of the violation, or any reproduction, counterfeit, copy, or colorable imitation

thereof, and all plates, molds, matrices, and other means of making the same, shall be delivered up and destroyed."

In the instant case, the Court's Default Judgment Order (Doc. # 28) provides that Defendant violated 15 U.S.C. §§ 1125(a)(1)(a) (trademark infringement) and (a)(1)(A) (unfair competition). (*Id.* at 8.) Thus, the Court has discretion to and will order that Defendant deliver the Otter Products to Plaintiffs for destruction. Although Defendant promptly rectified his violation of the Court's Order and offered to return his gross sales to Plaintiffs, the Court cannot be certain that Defendant will not, for a third time, attempt to open another internet-based marketplace and sell Otter Products. Indeed, Defendant has demonstrated he will act in accordance with his understanding of what a court order permits rather than adhere to the plain language of the order. To truncate any future violation of the Court's Orders, pursuant to 15 U.S.C. § 1118, Defendant must return any and all Otter Products to Plaintiffs.

Accordingly, the Court finds that these sanctions are appropriate for rectifying Defendant's conduct.

## IV.  **CONCLUSION**

For the foregoing reasons, Plaintiffs Otter Products, LLC and Treefrog Developments, Inc.'s Motion for Contempt (Doc. # 38) is GRANTED IN PART as follows:

1. Defendant Eddy Wang shall pay Plaintiffs Otter Products, LLC and Treefrog Developments, Inc. $2,156.55, which represents the amount of gross sales derived from Otter Products that were earned from Defendant's operation of "cosplay-

party" and "1 To 3 Shop" eBay seller accounts on or after March 28, 2019. If the parties disagree that the amount of $2,156.55 does not reflect the total amount of gross sales, Plaintiffs are permitted to seek discovery from Defendant regarding the narrow issue of determining the amount of total gross sales that Defendant earned from the sale of Otter Products through the eBay seller accounts "cosplay-party" and "1 To 3 Shop" on or after March 28, 2019.

2. Defendant Eddy Wang shall pay Plaintiffs Otter Products, LLC and Treefrog Developments, Inc. their reasonable attorneys' fees, costs, and reasonable expenses for all of their efforts in briefing the Motion for Contempt (Doc. ## 38, 41). On or before November 18, 2019, Plaintiffs shall submit their request for attorney fees, costs, and expenses, with supporting documentation.

3. Defendant Eddy Wang, and any principals, agents, servants, employees, successors, and assigns of Eddy Wang, and all those in privity, concern, or participation with Defendant Eddy Wang who receive actual notice of this Order, within thirty (30) days after service of this Order, shall deliver to Plaintiffs for destruction any and all Otter products or products bearing Otter Trademarks in the possession, custody, or control of Defendant Eddy Wang, which, if sold, distributed, displayed, marketed, advertised, or used, would violate the Court's Permanent Injunction Order, to Plaintiffs.

4. Defendant Eddy Wang, and any principals, agents, servants, employees, successors, and assigns of Eddy Wang, and all those in privity, concern, or participation with Defendant Eddy Wang who receive actual notice of this Order, shall within forty-five (45) days after service of this Order on Defendant Eddy Wang, file with the Court and

serve on Plaintiffs a report in writing and under oath setting forth in detail the manner and form in which Defendant Eddy Wang, and/or any principals, agents, servants, employees, successors, and assigns of Defendant Eddy Wang, and all those in privity, concert, or participation with Defendant Eddy Wang, have complied with this Order.

DATED: October 21, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge